NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>        v.<br><br>DANIEL MELAMED,<br><br>                    Defendant. | Crim. No. 24-00122 (GC)<br><br>**MEMORANDUM OPINION** |

**CASTNER, District Judge**

**THIS MATTER** comes before the Court upon Defendant Daniel Melamed's Motion for Early Termination of Supervised Release. (ECF No. 4.) The Government opposed. (ECF No. 9.) The Court has carefully reviewed the parties' submissions and decides the matter without oral argument pursuant to Local Criminal Rule 1.1 and Local Civil Rule 78.1(b). For the reasons set forth below, and other good cause shown, Mr. Melamed's Motion is **DENIED** without prejudice.

**I.    BACKGROUND**

Following Mr. Melamed's guilty plea to one count of conspiracy to commit arson in violation of 18 U.S.C. § 844(n), the Honorable Lewis A. Kaplan, U.S.D.J. sentenced Mr. Melamed to a term of imprisonment of 66 months, to be followed by three years of supervised release.[1] ECF No. 92, *United States v. Melamed*, Cr. No. 19-443 (S.D.N.Y.). The charges against Mr. Melamed,

---

[1] Mr. Melamed was charged, pled guilty, and was sentenced in the United States District Court for the Southern District of New York. *See United States v. Melamed*, Cr. No. 19-443 (S.D.N.Y.). After being released from prison, Mr. Melamed's case was transferred to the District of New Jersey in light of Mr. Melamed's "[l]ongstanding residence and prosocial ties" to this District. (ECF No. 1.)

a real estate developer, stemmed from a plan to set fires at residential buildings Mr. Melamed owned or planned to acquire, but which were inhabited by holdover tenants or "squatters." (ECF No. 4 at 2; ECF No. 9 at 1-2.[2]) According to Mr. Melamed, the goal of the conspiracy was "to create a small smoke condition outside of the properties which would result in the squatters vacating the premises" so that the locks could be changed. (ECF No. 4 at 2.) Mr. Melamed pled guilty to conspiracy to set fires on five occasions at three separate residential buildings. (*Id.*; ECF No. 9 at 2.) Mr. Melamed submits that no one was injured as a result of these fires. (ECF No. 4 at 2.) The Government counters that in one instance, the family living in the house escaped, but their multiple pets did not. (ECF No. 9 at 5). At sentencing, Judge Kaplan characterized Mr. Melamed's behavior as "shocking," and he noted that Mr. Melamed "recklessly endangered human life over and over and over again, to make a profit." *See* Tr. of Sentencing Hr'g., ECF No. 87 at 31:3-6, *United States v. Melamed*, Cr. No. 19-443 (S.D.N.Y.).

Mr. Melamed was released from prison on September 5, 2023, and thereafter commenced his term of supervised release. At the time he filed the instant Motion, Mr. Melamed had completed 16 months of his 36-month term of supervised release.

## II.     LEGAL STANDARD

Courts enjoy broad discretion in deciding whether to grant early termination of supervised release. *See United States v. Melvin*, 978 F.3d 49, 52 (3d Cir. 2020). Under 18 U.S.C. § 3583(e)(1), a court may terminate a term of supervised release "at any time after the expiration of one year of supervised release . . . if it is satisfied that such action is warranted by the conduct of the defendant

---

[2]     Page numbers for record cites (*i.e.*, "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

released and [in] the interest of justice." In determining whether the defendant's conduct and the interest of justice warrant the relief sought, courts must consider the following sentencing factors:

> (1) the nature and circumstances of the offense and the defendant's history and characteristics;
>
> (2) the need to afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide him with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentence and sentencing range established for the defendant's crimes;
>
> (4) pertinent policy statements issued by the United States Sentencing Commission;
>
> (5) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (6) the need to provide restitution to any victims of the offense.

*Melvin*, 978 F.2d at 52 (citing 18 U.S.C. § 3553(a)(1), (2)(B)-(D), (4)-(7)).

District courts need not "make specific findings of fact with respect to each of the factors," nor must they find that extraordinary or changed circumstances exist in order to grant a defendant's request for early termination of supervised release. *Id.* at 52-53. However, early termination of supervised release will generally "be proper only when the sentencing judge is satisfied that new or unforeseen circumstances warrant it" because § 3553(a) requires that sentences be "sufficient, but not greater than necessary when first pronounced." *Id.* at 53 (internal citations and quotation marks omitted); *see also United States v. Szymanski*, Cr. No. 12-247, 2020 WL 6515958, at *2 (W.D. Pa. Nov. 5, 2020) ("The court explained in *Melvin* that, although not required, some changed circumstances will generally be important to warrant early termination of supervised release[.]").

### III.     DISCUSSION

Mr. Melamed submits that he has been "a prototypical probationer and is deserving of early termination of the remaining term of his supervision." (ECF No. 4 at 2.) More specifically, Mr. Melamed contends that early termination is warranted because (1) he has paid all financial penalties imposed by the sentencing court, including $500,000 in forfeiture, $57,000 in restitution and a $50,000 fine; (2) he has "been fully compliant with all terms of his supervision" and "has been transferred to the low intensity supervision unit"; and (3) he "continues to be fully employed and supports his closeknit family," including his wife of 15 years and his four children. (*Id.*)

The Government urges the Court to deny the Motion, arguing that Mr. Melamed "has fallen far short of his burden to establish that early termination of his supervised release is warranted." (ECF No. 9 at 5.) According to the Government, the severity of Mr. Melamed's crime weighs against granting early termination. (*Id.*) Although at sentencing the Government agreed that Mr. Melamed did not "*intend* to damage property or endanger lives," the Government argues that such harm was the predictable outcome of Mr. Melamed's behavior. (*Id.*) Further, the Government asserts that Mr. Melamed's conviction in the instant case is part of a "recurring pattern of criminal conduct," which weighs against early termination. (*Id.*) For support, the Government submits that in 2019, Mr. Melamed pled guilty to one count of residential mortgage fraud in New York state court, although the Government notes that the New York Supreme Court, Appellate Division, ultimately vacated the conviction. (*Id.* at 6.) Moreover, the Government argues that Mr. Melamed was found guilty of misdemeanor violations for conducting unlawful evictions. (*Id.*) Finally, the Government submits that Mr. Melamed's "compliance with the conditions of his release thus far and his payments against his court-ordered restitution and penalties reveal the effectiveness of his term of supervised release." (*Id.* at 7.)

The Court has considered the § 3553(a) factors and finds that early termination of supervised release is neither warranted nor in the interest of justice. As an initial matter, this Court takes seriously the severity of Mr. Melamed's offenses. And Mr. Melamed, for his part, does not argue that Judge Kaplan's sentence was unfair when imposed. The Court will deny Mr. Melamed's Motion, as Mr. Melamed has not identified any new or unforeseen circumstances to warrant such relief.

Mr. Melamed's compliance with the conditions of his release is commendable; however, compliance with the conditions of his supervision is precisely what is expected of him. Courts have routinely found that compliance with the terms of supervised release is not enough to succeed on a motion for early termination of supervised release. *See United States v. Desu*, Cr. No. 18-613, 2024 WL 3878748, at *3 (D.N.J. Aug. 20, 2024) ("While the [c]ourt commends [the defendant's] progress towards living a law-abiding life and fulfilling his financial obligations, compliance with the terms of supervised release is what is expected of probationers, and without more, cannot justify early termination." (citing *United States v. Caruso*, 241 F. Supp. 2d 466, 469 (D.N.J. 2003))); *United States v. Amato*, Cr. No. 18-561, 2024 WL 3850384, at *3 (D.N.J. Aug. 16, 2024) (same); *United States v. Rosendary*, Cr. No. 22-00742, 2024 WL 619574, at *3 (D.N.J. Feb. 14, 2024) ("[The defendant's] compliance with the terms of supervision is expected and not enough to justify early termination."); *United States v. Jaime*, Cr. No. 05-34, 2013 WL 4434909, at *1 (W.D. Pa. Aug. 16, 2013) ("[I]t is axiomatic that 'full compliance with all of the conditions of supervised release does not warrant early termination.'") (citation omitted); *see also United States v. Smith*, Cr. No. 16-141, 2023 WL 2991200, at *4 (W.D. Pa. Apr. 18, 2023) ("The fact of [the defendant's] compliance with the conditions of supervision may very well mean that supervision is serving its deterrent and rehabilitative purposes and continuation of it to full term

will achieve its desired effects on the supervised individual and community."). Likewise, Mr. Melamed's payment of all fines and restitution is insufficient to warrant early termination of his supervised release. *See United States v. Wilson*, Cr. No. 01-0553, 2017 WL 3332261, at *2 (D.N.J. Aug. 4, 2017) ("[The Defendant's] contention that he has complied with the conditions of his supervised release and fully paid back his restitution . . . is commendable, but insufficient by itself to warrant early termination.") (internal citation omitted). Thus, the Court finds that Mr. Melamed's laudable compliance with the terms of his supervised release and the payment of his financial obligations is not a basis to grant early termination.

Further, Mr. Melamed does not advance any other justification upon which early termination could be warranted. *See United States v. Elston*, Cr. No. 09-00091, 2023 WL 6447257, at *2 (E.D. Pa. Oct. 3, 2023) (denying motion for early termination of supervised release, reasoning that the defendant had not alleged "that his continued supervision [was] in any way impeding his ability to obtain employment, travel, or live his life"). There is no indication that the conditions of Mr. Melamed's supervised release are preventing him from earning a living. To the contrary, Mr. Melamed asserts in his Motion that he "continues to be fully employed and supports his closeknit family." (ECF No. 4 at 2.) And there is no suggestion that Mr. Melamed is unable to travel or be with his family, as this Court recently granted Mr. Melamed's request to travel to Cancun, Mexico for a Passover family trip in April 2025. (ECF No. 11.) Nor does the fact that Mr. Melamed is a husband and father weigh in favor of granting early termination. *See United States v. Soto*, Cr. No. 20-585, 2020 WL 7090679, at *2 (D.N.J. Dec. 4, 2020) ("As for his marriage and fatherhood, the [c]ourt does not view such events as either weighing in favor or against [the d]efendant's motion [for early termination of supervised release.]").

6

Accordingly, in light of the Court's consideration of the § 3553(a) factors and lack of any "new or unforeseen circumstances" justifying early termination of supervised release, the Court declines to exercise its discretion to terminate Mr. Melamed's supervised release. *See Melvin*, 978 F.3d at 53. At bottom, the Court is satisfied that Mr. Melamed's sentence is "sufficient but not greater than necessary to achieve the sentencing goals outlined in § 3553(a)." *United States v. Ferriero*, Cr. No. 13-0592, 2020 WL 6701469, at *3 (D.N.J. Nov. 13, 2020).

## IV. CONCLUSION

For the foregoing reasons, and other good cause shown, Mr. Melamed's Motion for Early Termination of Supervised Release (ECF No. 4) is **DENIED** without prejudice. An appropriate Order follows.

Dated: June 9, 2025

GEORGETTE CASTNER
UNITED STATES DISTRICT JUDGE